The opinion of the court was delivered by
Manning, C. J.
The plaintiffs in join the execution of a judgment in favor of G. W. Dillard for one thousand dollars and interest, upon which there has been credited a payment of seventy-one dollars. The execution issued at the instance of Dillard’s executrix, and the tutrix to his minor heirs, and seizure was made of “ a power press, six cases of type, galleys, rules, five imposing stones, one desk, two stoves and pipe, three desks, and one table.”
*1281 The allegations of the injunction are that the plaintiffs are'practL cal printers,-and that the articles of property seized, worth two thousand dollars, are exempt from seizure because they are the tools and Implements of their trade, and. necessary to its exercise, by which they gain a living.
The plaintiffs compose a partnership, the business of which was formerly to print and publish a newspaper, and to do job-work. White swears the-daily newspaper had ceased to be published sixteen weeks before the seizure.. Then it became a weekly, and that expired on 80th.1 of June. In another place he says he commenced the weekly after the seizure. The seizure was made August 9th.
The firm continued to do job-printing after the newspaper was no longer issued, and one of them testifies that the annual receipts from their entire business were three thousand dollars. The attorney, who ordered the seizure for Mrs. Dillard, seems to have been careful to instruct the sheriff not to seize the material of the job-office, but when that officer requested White to point out such things as belonged to that department, he refused to give him any assistance, and warned him that it was a government office he was entering, and he might get himself into trouble by seizing government property. It appears one of the firm was collector of -the port there.
The fact appears to be that no portion of the materials seized belonged to either department exclusively, except perhaps the imposing stones. The press, galleys, most of the type, rules, were used indiscriminately for either the job-work, or the newspaper. A printing establishment in such a country-town as Shreveport would not need two separate and distinct departments. The stoves would not appear to belong to any printing business.
Some testimony was taken as to the unprofitableness of the newspaper business in Shreveport, probably with a view of showing that the plaintiffs could not have made their living by it. But one of them has sworn to the amount of annual receipts, and also that they owed for rent, and materials, and paper. The lessor’s claim is for $850, the material man’s is $220, and the amount of the debt for paper is unmentioned. It is very easy to see how one can support a family on a business as large as this is shown to be, when all the receipts are consumed at home, and none are applied to the payment of debts.
The claim of exemption of this property from seizure is based on art. 644 of the Code of Practice, and we are referred'to an express adjudication of this court on the nature and extent of the exemption so far as it applies to a printer. Prather v. Bobo, 15 Annual, 524.
It is not needful to say in this case whether we think a press, and material for printing, can properly or reasonably be included in those *1282 implements, that are necessary for the exercise of a printer’s trade or calling. If they are, ninety-nine hundredths of the printers are ‘ exercising their calling ’ without the implements that are necessary to do it, and notwithstanding, they ‘ make a living.’ It is sufficient to say, that the exemption is claimed here by a partnership, which is an ideal being, has no living to make, and is not within the language or intendment of the exemption law, which, being in derogation of the general law that all of a debtor’s property is the common pledge of his creditors, must be construed strictly.
We are warmly urged to carry out in a liberal spirit the enlightened policy of modern legislation, which seeks to protect tire citizen from pauperism. An enlightened policy, which teaches the citizen the weight of an obligation by enforcing its performance, cannot look without dismay at the spectacle of any debtor, keeping secure in his grasp property, not legitimately or necessarily included within the terms of the law which accords it to him. The abrasion of the moral sense of the general public, occasioned by frequently witnessing this successful defiance of just creditors, is a greater harm than the private suffering of an Isolated individual here and there, and enlightened statesmanship looks only to the general good.
The judge below dissolved the injunction with one hundred dollars damages. His judgment is affirmed.